Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

Roanoke Division

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

FEB 0.6 2025

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

| | | |
|---|---|---|
| **Brian David Hill** | ) | Case No. |
| | ) | |
| | ) | **4:25CV 00004** |
| | ) | *(to be filled in by the Clerk's Office)* |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| **Haylea Workman,** | ) | |
| **Drew Inman** | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the* | |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

## COMPLAINT AND REQUEST FOR INJUNCTION//
## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.  The Parties to This Complaint

#### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Brian David Hill |
| Street Address | 310 Forest Street, Apt. 2 |
| City and County | Martinsville |
| State and Zip Code | Virginia 24112 |
| Telephone Number | 276-790-3505 |
| E-mail Address | c/o Roberta Hill at rbhill67@comcast.net |

#### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

## JURY DEMAND

**Plaintiff has a demand for jury trial for the Defendants
if this Court allows jury trials for cases arising from
42 U.S. Code § 1983. Plaintiff requests a trial by jury pursuant
to Rule 38 of the Federal Rules of Civil Procedure.**

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

### Defendant No. 1

| | |
|---|---|
| Name | Haylea Workman |
| Job or Title *(if known)* | U.S. Probation Officer for the Western District of Virginia |
| Street Address | 210 Franklin Road S.W., Room 402 |
| City and County | Roanoke |
| State and Zip Code | Virginia 24011 |
| Telephone Number | (540) 857-5180 |
| E-mail Address *(if known)* | haylea_workman@vawp.uscourts.gov |

### Defendant No. 2

| | |
|---|---|
| Name | Drew Inman |
| Job or Title *(if known)* | Assistant U.S. Attorney for the Western District of Virginia |
| Street Address | 310 1st Street, S.W., Room 906 |
| City and County | Roanoke |
| State and Zip Code | Virginia 24011 |
| Telephone Number | (540) 857-2250 |
| E-mail Address *(if known)* | drew.inman@usdoj.gov |

### Attorney for Defendants

| | |
|---|---|
| Name | United States Attorney's Office |
| Job or Title *(if known)* | U.S. Department of Justice |
| Street Address | 310 1st Street, S.W., Room 906 |
| City and County | Roanoke |
| State and Zip Code | Virginia 24011 |
| Telephone Number | (540) 857-2250 |
| E-mail Address *(if known)* | |

### Attorney for Defendants

| | |
|---|---|
| Name | Office of the Attorney General |
| Job or Title *(if known)* | U.S. Department of Justice |
| Street Address | 950 Pennsylvania Avenue, NW |
| City and County | Washington, DC |
| State and Zip Code | Washington, DC 20530-0001 |
| Telephone Number | (202) 514-2000 |
| E-mail Address *(if known)* | |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question                ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S. Code § 1983 - Civil action for deprivation of rights, U.S. Constitution Amendment I (First Amendment), U.S. Constitution Amendment V (due process), 28 U.S. Code § 1651 (All Writs Act), U.S. Constitution Amendment IV (right to privacy)

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*   Brian David Hill                                , is a citizen of the

State of *(name)*   Virginia                                .

b.    If the plaintiff is a corporation

The plaintiff, *(name)*                                , is incorporated

under the laws of the State of *(name)*                                ,

and has its principal place of business in the State of *(name)*

                               .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)*   Haylea Workman and Drew Inman     , is a citizen of

the State of *(name)*   Virginia                            . Or is a citizen of

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

*(foreign nation)* _____ .

b.  If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

**This legal action is not asking for monetary relief. It is mainly about asking for an injunction and injunctive relief.**

**Since this complaint is being filed as to proceed in forma pauperis, it is requested that the Court issue an ORDER to serve the summons and complaint on the Defendants' by a U.S. Marshal or Deputy Marshal or Someone Specially Appointed. This request is in accordance with Rule4(c)(3) of the Federal Rules of Civil Procedure.**

**Citing Rule 4(c)(3): "By a Marshal or Someone Specially Appointed. At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915 or as a seaman under 28 U.S.C. §1916."**

## III.    Statement of Claim

1. This is an action under 42 U.S. Code § 1983 - Civil action for deprivation of rights under the color of law and 28 U.S. Code § 1651 under the All Writs Act, challenging individual Defendant United States Probation Officer Haylea Workman ("USPO Workman") and challenging individual Defendant Assistant U.S. Attorney Drew Inman ("AUSA Inman"). This action is to challenge the civil rights violations being perpetuated by the Defendant's

usage of defamatory/libelous/slanderous typed statements made by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). They both made defamatory/libelous/slanderous typed statements in an attempt to push more stringent supervised release conditions on Plaintiff Brian David Hill ("Plaintiff"). See **EXHIBIT 3** and **EXHIBIT 7**. This case seeks declaratory relief that Defendants are in violation of the Constitutional rights of Plaintiff Brian David Hill. That they are violating Plaintiff's first amendment right under the U.S. Constitution in its Bill of Rights, Fifth amendment right under the U.S. Constitution in its Bill of Rights, and that the Defendants appear to be wanting to violate attorney/client privilege of Brian David Hill and violate the Fourth Amendment right under the U.S. Constitution of the family members, friends, and associates of the Plaintiff. They are engaging in defamatory/slanderous/libelous conduct which is in their push to monitor everything Plaintiff types in communications even when not on the internet and to interfere with and meddle with Plaintiff's legal case work. The Defendant Haylea Workman wants to search the legal papers, evidence, and computer files of legal case files subject to attorney/client privilege while Plaintiff is involved in pending litigation in both the state and federal courts. Plaintiff is filing this action of litigation, on a Pro Se basis and is proceeding in forma pauperis. Affidavit/Application is attached petitioning for IFP status but the Clerk can file the Affidavit as a separate document.

2. On or about Dec 21, 2024, The Plaintiff had filed pro se evidence including Audio CD discs (one copy was made for the U.S. Attorney, one for the Federal Public Defender, one for the judge, one for the Clerk) which the Clerk had electronically served this filing with the U.S. Attorney Assistant Drew Inman. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29 (six Exhibits, and all attachments): PRO SE Additional

Evidence (Attachments: # 1 Note, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Envelope)(ck) *filing includes several CD's which are available for viewing in Clerk's office in Roanoke* (Entered: 01/07/2025). It was mailed on December 21, 2024. It was received on Dec 23, 2024, and was considered filed on Dec 23, 2024.

3. The purpose of filing this pro se evidence was to prove to the Honorable U.S. District Court Thomas T. Cullen that there was evidence disproving the false information and fraud upon the court of what was filed by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). That did not contain all evidence the Plaintiff has and will file which disproves the defamatory/libelous/slanderous typed statements made by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**).

4. The evidence Plaintiff had submitted proved different things in regard to defamatory/libelous/slanderous typed statements made by both Defendants'. It had proven that the Defendants appear to be lying by omission as well as to not being honest with the Court about the eight or nine years of Plaintiff's supervision under Jason McMurray, Senior U.S. Probation Officer. It also had shown that Defendants knew for a fact that Plaintiff had never raped anybody, never molested anybody, never was charged with assault, nobody has ever come forth and ever claimed Plaintiff did anything sexual to anybody since Plaintiff is still a virgin at age 34, never groomed anybody sexually, never shoplifted, never engaged in arson, never did drugs/narcotics, never was involved in organized crime, never murdered, and was never convicted of a violent crime. Plaintiff has no victims according to the Pre-sentence Investigation report. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-5, pages: 28, 31-35, 36-54. It is clear that Plaintiff had never sexually abused anybody in the 34 years of his entire

life. The Defendants know this or they are ignorant about the facts and evidence in his criminal case. See United States v. Hill, 4:20-cr-00027, (W.D. Va.); and United States v. HILL, 1:13-cr-00435, (M.D.N.C.). Also it should be known that when Plaintiff had been charged with the supervised release violation in 2018, Jason McMurray and the Assistant U.S. Attorney Kari Kristina Munro for the Western District of Virginia at the time in 2018 had never accused Plaintiff of any of the falsehoods being uttered by both Defendant AUSA Inman (**EXHIBIT 2**) and Defendant USPO Workman (**EXHIBIT 1**). See United States v. Hill, 7:18-mj-00149, (W.D. Va. May 02, 2022) ECF No. 30 (TRANSCRIPT); and see United States v. Hill, 7:18-mj-00149, (W.D. Va. May 02, 2022) ECF No. 31 (TRANSCRIPT).

5. For eight or nine years, between the years of 2015 to 2023, United States Probation Officer Jason McMurray had supervised Plaintiff Brian David Hill for a majority of the timeframe of his supervision. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-5.

6. USPO McMurray was completely erased/omitted from the Defendant AUSA Inman's defamatory/libelous/slanderous remarks and statements in his motion for modifying the Plaintiff's conditions for supervised release. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23. See **EXHIBIT 2**. USPO McMurray was completely erased/omitted from the Defendant USPO Workman's defamatory/libelous/slanderous remarks and statements in her petition for modifying the Plaintiff's conditions for supervised release. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Nov 15, 2024) ECF No. 11. See **EXHIBIT 1**.

7. USPO McMurray was treated as though he did not exist in the supervision of the Plaintiff. Was treated as such by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). See what they filed.

8. Brian David Hill was appointed a Federal Public Defender in the case, Attorney Nia Vidal who admitted that she was limited in her representation of Plaintiff. The defamatory/libelous/slanderous statements are to the extent where even Attorney Nia Vidal is ineffective against the lies and false information submitted by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). See **EXHIBIT 7**. Nia Vidal is not a defendant in this case but is only used as a reference point for arguments in support of this lawsuit such as the statement of facts for the statement of claim and all facts alleged in this complaint herein.

9. However, in the limited representation by Attorney Nia Vidal, she did submit the truth but failed to include any exhibits or actual evidence proving it, so the lies were still essentially unchallenged in the criminal case. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 17, 2024) ECF No. 26. She did a great job as a court appointed attorney but doesn't have the ability to challenge every lie uttered or typed up by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). See **EXHIBIT 7**. Plaintiff feels he has no choice but to file this lawsuit to stop the lies and liars in a legal lawful way. To stop the Defendants from lying to achieve their aims in the federal court system against the Plaintiff.

10. Because USPO McMurray was treated as though he doesn't exist and omitted as though he had never existed in the supervised release sentence of Plaintiff, the Defendants' never informed the Honorable U.S. District Judge Thomas T. Cullen ("Judge Cullen") of the death of witness USPO McMurray, because he was treated as though he never existed. This leaves a hole in eight or nine years of the supervised release of Plaintiff in the criminal case in Defendant's unconstitutional big to instill more stringent supervised release conditions on the Plaintiff. See United States v. Hill, 4:20-

cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29, Pages 28-33. Page 28 is of the former Probation Officer Jason McMurray who would have been a valuable witness in Plaintiff's criminal case demonstrating to the court that he was compliant with his conditions of supervision against the defamatory/libelous/slanderous statements of USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**).

11. Plaintiff knew he was not going to receive a fair hearing and wanted to address the lies in a soft pro se motion trying not to spew allegations which could anger the judge (who is already prejudiced due to the fraud by Defendants) to work against the Plaintiff. So Plaintiff carefully just filed voluminous evidence explaining to the judge the facts which were not addressed by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29: PRO SE Additional Evidence (Attachments: # 1 Note, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Envelope)(ck) *filing includes several CD's which are available for viewing in Clerk's office in Roanoke* (Entered: 01/07/2025). Plaintiff's sole intent was hoping that Judge Cullen would be angry after being given the facts that the evidence had proven he was lied to by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). Plaintiff was hoping that the judge would demand answers from the U.S. Attorney Office for why he would be told lies and false information as well as omitting Brian's compliance with his former supervising probation officer USPO McMurray.

12. On or about October 27, 2024, USPO Workman (See **EXHIBIT 1**) made false statements in her petition to modify the conditions of Plaintiff.

13. On or about December 6, 2024, AUSA Inman (See **EXHIBIT 2**) made

false statements in support of USPO Workman's petition to modify the conditions of Plaintiff.

14. Plaintiff filed his pro se evidence hoping that Judge Cullen would demand answers from AUSA Inman and USPO Workman as to why he was lied to by them. See Plaintiff's filing: United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29: PRO SE Additional Evidence (Attachments: # 1 Note, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Envelope)(ck) *filing includes several CD's which are available for viewing in Clerk's office in Roanoke* (Entered: 01/07/2025). Again, as to the exhibits of Audio CD discs; one copy was made for the U.S. Attorney, one copy was made for the Federal Public Defender, one copy was made for the judge, and one copy was made for the Clerk. Plaintiff did everything properly on this by making sure enough copies were available for the clerk to serve on all counsel of record in the criminal case.

15. Unfortunately, on or about January 7, 2025, the Hon. Judge Thomas Cullen rejected all of the evidence and refused to take it into consideration before the scheduled hearing over the defamatory/libelous/slanderous typed statements made by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). See United States v. Hill, 4:20-cr-00027, (W.D. Va. Jan 07, 2025) ECF No. 30: ORDER re 29 Additional Evidence, filed by Brian David Hill. Signed by District Judge Thomas T. Cullen on 1/7/2025.(ck). The judge refused to accept any evidence from the Plaintiff. This opens the door to fears that Plaintiff may face a kangaroo court hearing due to the prejudicing of the judge by the Defendants lying and misrepresenting the case and facts as a whole. Misrepresentation by misinformation and disinformation by the Defendants.

16. The Plaintiff decided to take legal action and not to wait for what he fears
will be or may be a kangaroo court hearing (one sided federal court hearing)
where Judge Thomas Cullen may jump over (overlook, ignore) Plaintiff's
evidence and only seems to want to hear what the Defendants' have to say.
So, they are allowed to lie against Plaintiff while Plaintiff is not allowed to
submit any evidence which would disprove the
defamatory/libelous/slanderous typed statements made by both USPO
Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). If
Plaintiff submits any hard evidence aka prima facie evidence, the judge will
just refuse to take any of it into consideration. Plaintiff now feels the only
quick remedy he has right now is to file a lawsuit as soon as possible to
prevent the kangaroo court hearing from becoming a reality which violates
Plaintiff's due process rights. Plaintiff means no disrespect when he
mentions about the legal terms of a kangaroo court in legal arguments, but he
fears the prejudice caused by the Defendants' defamatory/libelous/slanderous
typed statements is now so severe that Plaintiff will not face a fair impartial
unbiased hearing in federal court. Plaintiff fears only lies/false-statements
will be accepted because it is by the U.S. Government and truth will be
disregarded due to the prejudice caused by Defendants'
defamatory/libelous/slanderous typed statements which is a fraud upon the
court.

17. Due to the sake of brevity, Plaintiff will not resubmit the same evidence
in this complaint but incorporates by reference, as if fully set forth herein, the
entire filing of Document #29, as it was already submitted to the clerk and
was properly served with AUSA Inman by the Clerk who received Plaintiff's
pro se evidence. Again, so instead he will incorporate it as by reference.
Referring to Plaintiff's filing: United States v. Hill, 4:20-cr-00027, (W.D.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Va. Dec 23, 2024) ECF No. 29: PRO SE Additional Evidence (Attachments: # 1 Note, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Envelope)(ck) *filing includes several CD's which are available for viewing in Clerk's office in Roanoke* (Entered: 01/07/2025). Again, as to the exhibits of Audio CD discs; one copy was made for the U.S. Attorney, one copy was made for the Federal Public Defender, one copy was made for the judge, and one copy was made for the Clerk. The U.S. Attorney Asst. Drew Inman represents the interests of the U.S. Probation Officer Haylea Workman who pushed for the petition for modifying the conditions of release concerning Plaintiff. Plaintiff is willing to produce copies of the filed Audio CD discs of Document #29 to serve on Defendant Haylea Workman directly upon request by the Court.

18. Instead, Plaintiff will file alongside with this complaint, further evidence. Plaintiff will file affidavits from both Roberta Hill (mother of Plaintiff) and Plaintiff (See **EXHIBIT 4**) proving that the AUSA Inman (See **EXHIBIT 2**) and USPO Workman (See **EXHIBIT 1**) lied about Plaintiff by accusing him of engaging in a criminal behavior of wiretapping just for simply recording him and his probation officer Haylea Workman and the supervisor (See **EXHIBIT 6**) in his own home when the supervisor U.S. Probation Officer who Plaintiff does not recall his name, that officer said Plaintiff was free to record the conversation on April 25, 2024. See **EXHIBIT 5**. Defendant USPO Workman compelled (forced by circumstances) the Plaintiff to give her and the supervisor officer his cell phone while Plaintiff was recording the conversation which surprised Plaintiff and caused Plaintiff to go to his mother's apartment to alert her that his probation officer Haylea Workman was taking things farther than USPO McMurray and USPO Kristy Burton had ever done before. Plaintiff then came back down to his apartment along with his mother Roberta Hill to be witnesses to the new encroachments on

Plaintiff's conditional liberty, because they were preventing the Plaintiff from recording the conversation and then AUSA Inman uses that moment to falsely accuse the Plaintiff of violating wiretapping law for recording in his own home using his cell phone which was temporarily seized by USPO Workman and her bald headed supervisor (See **EXHIBIT 6**). The Plaintiff never left the premises of the triplex with three apartments. Plaintiff's mother is in the apartment above his apartment. Therefore, the Plaintiff was still on the property at the time. The Plaintiff had no intention of violating any wiretapping law. Plaintiff only appeared to have consented because if he had not, Plaintiff would be violated of his supervised release for refusal to submit his cell phone to a search, so Plaintiff was forced by his conditions and by circumstance to turn over his cell phone while it was recording. It was not consensual on the context that if Plaintiff did not permit USPO Workman to seize Plaintiff's cell phone temporarily or permanently, then Plaintiff would face a non-compliance charge. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Nov 15, 2024) ECF No. 11: Page 7 of 7. Plaintiff realized after the remarks accusing Plaintiff of violating the wiretapping law, that it was a dirty trick being pulled by USPO Workman to try to seize the device while it was recording to force the Plaintiff into a situation where they could then delete the recording or obstruct the Plaintiff's right to record the conversation in his own home while his constitutional rights such as attorney-client privilege may be put in jeopardy. Plaintiff bought a voice recorder which is not an internet capable device so that he does not run into such issues in the future. The Plaintiff by any means is not trying to violate the wiretapping law but is simply trying to protect himself from being lied about as well as recording the conversation for purposes of his autism spectrum disorder concerning any memory retention issues. Like if the probation officer was talking about verbal instructions for Plaintiff's compliance with his supervised release, Plaintiff recording his conversation would aid and assist

his compliance with his supervision. It was the dirty tricks and dirty stuff being pulled by USPO Workman. They both knew when they discovered it was recording and was saved by the bald-headed supervisor after stopping the recording application on the cell phone. The supervisor had consented to the recording by saving the audio recording started by Plaintiff and had consented verbally in the recording. See **EXHIBIT 5**. Plaintiff was recording before the device was taken from him by defacto force because if the Plaintiff had not complied then they would have violated the Plaintiff's supervised release on the spot if Plaintiff had not turned over his cell phone to USPO Workman. It is wrong to pull this stunt then accuse the Plaintiff of violating wiretapping law when the situation was not voluntary since the Plaintiff could refuse to give his cell phone and still record but then face a supervised release violation charge for non-compliance. Again, Plaintiff had bought a recording device which has no internet capability so that this situation does not happen again, and Plaintiff can record the conversations with his probation officer without being wrongly accused of violating the wiretapping law, since it is not an internet capable device where USPO Workman can ask for the device while it is recording or violate the Plaintiff. The Defendant Haylea Workman set up Brian for this wiretapping accusation because if she had not asked for the Plaintiff to turn over his phone to her, then Plaintiff never would have been accused of felony wiretapping at all. Plaintiff did not voluntarily turn it over to the supervisor or Haylea Workman because if he had verbally refused to turn over his phone while it was recording the conversation, then Plaintiff would have been charged with a supervised release violation for not turning over his cell phone to be subject to search while it was recording the conversation. So, Haylea Workman is the sole cause of the accusation of felony wiretapping which had been set up against Plaintiff. She set him up whether she intended for it or not. Set up Brian with either a supervised release violation for non-compliance to a

search and seizure request when asked to turn over his cell phone to her on
April 25, 2024, or by compelling Brian to turn over his cell phone to Haylea
Workman while it was recording, and Brian was shocked that she would do
this and went to have his mother quickly come down to see what was going
on here. Look, Haylea Workman lied to Plaintiff and his mother Roberta Hill
during her visit in November, 2023. Haylea Workman said in her first initial
visit that she will keep things the same as the way Jason McMurray had
conducted the supervised release of Plaintiff. See United States v. Hill, 4:20-
cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-5, page 18 of 54.

19. On or about February 14, 2024, Plaintiff's grandfather Kenneth R.
Forinash, Senior was pulled over by Emerald Isle, NC police officer woman
after Brian's family members had noticed that the stoplight turned from
green to red (no yellow light). See United States v. Hill, 4:20-cr-00027,
(W.D. Va. Dec 23, 2024) ECF No. 29, Pages 37-46. Plaintiff was in the
passenger seat, his mother Roberta Hill and Stella Forinash in backseat. Was
pulled over by this police officer woman on Coast Guard Rd, the same road
of the place to stay which was reported to Defendant USPO Workman and
was approved by Defendant USPO Workman. Roberta Hill, Plaintiff, Stella
Forinash, and Kenneth Forinash all suspected that Haylea Workman may had
contacted Emerald Isle, NC Police Department to harass or scare Plaintiff
and/or his family on February 14, 2024. After that incident, Plaintiff had
decided that every home visit by Haylea Workman would be recorded using
a voice recorder device or his cell phone or both. After Defendant Haylea
Workman compelled Plaintiff to turn over his cell phone to Defendant
Haylea Workman on April 25, 2024, then later on she had used that in her
petition for modification filing (See **EXHIBIT 1**) accusing the Plaintiff of
wiretapping on April 25, 2024, Plaintiff had his mother order a voice
recorder or two voice recorders which are not internet capable devices, they

have no possible internet connection at all, and so Plaintiff will be able to record his conversations with his probation officer Haylea Workman instead of using a cell phone to record because he does not trust her after what had happened on February 14, 2024. Plaintiff does not wish to be accused of felony wiretapping again, so he has two voice recorders which are not internet capable to protect himself from being lied about by his own probation officer. The warning ticket issued to Kenneth Forinash by Emerald Isle Police Department in North Carolina is Ticket No. 51542 for reference.

20. On or about February 28, 2024, Plaintiff had recorded the conversation with himself and Defendant USPO Workman. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-7. Fourteen days after the police pulling over U.S. Air Force veteran Kenneth R. Forinash, Sr. with Plaintiff who was in the passenger seat, his mother Roberta Hill and Stella Forinash in the backseat. Stella Forinash is Brian's grandma and Kenneth Forinash is Brian's grandpa. Anyways, you can hear in that recording there was part of a conversation where Plaintiff's mother tried to explain to USPO Workman about the discovery materials reviewed in Plaintiff's federal criminal case regarding his charge of possession of child pornography. See United States v. HILL, 1:13-cr-00435, (M.D.N.C.). On January 22, 2015, this was the first time Plaintiff had ever reviewed over the State Bureau of Investigation (SBI) forensic report. The SBI is in the state of North Carolina. Photos were taken of this forensic report in case it was covered up at a later time, which it was covered up at a later time. See Hill v. Executive Office for United States Attorneys, 4:17-cv-00027, (W.D. Va.), and Hill v. Executive Office for United States Attorneys, 4:17-cv-00027, (W.D. Va. Dec 22, 2017) ECF No. 49. They destroyed the SBI report so Plaintiff would never be able to use it to prove his innocence to his charge and wrongful conviction of possession of child pornography. The destruction of the SBI report and

interrogation audio was selective as other discovery materials were not
reportedly destroyed according to the Vaughn Index. See Hill v. Executive
Office for United States Attorneys, 4:17-cv-00027, (W.D. Va. Dec 22, 2017)
ECF No. 49-2. The Plaintiff, his mother, grandpa Kenneth Forinash and
Grandma Stella Forinash all reviewed over the SBI forensic report on
January 22, 2015, for the first time ever in his federal criminal case, a few
months after he was convicted and released from imprisonment. Plaintiff
never was allowed to see his discovery materials for his federal criminal case
until after he falsely plead guilty. The Federal Public Defender Asst. Eric
David Placke of Greensboro, North Carolina never allowed Plaintiff to see
the discovery materials entirely while Plaintiff was in jail. After Plaintiff and
his family reviewed over the SBI report, the entire family knew Plaintiff was
indeed framed with child porn. Plaintiff's mother tried to explain that to
Defendant USPO Haylea Workman but she seemed to shrug it off like she
could care less. Seeing the lies told by both USPO Workman (See **EXHIBIT
1**) and AUSA Inman (See **EXHIBIT 2**) demonstrates that they could care
less about what was in the State Bureau of Investigation forensic report case
file, SBI case # 2012-02146, by SBI Special Agent (SA) Rodney V. White.
Case file reviewed by SBI Special Agent L. D. Shank. Brought up with
USPO Workman that for 11 months after Plaintiff's computer was seized by
law enforcement, eMule file sharing program continued reportedly
downloading materials to Plaintiff's computer for 1 month and 8 days while
in Plaintiff's custody, but then eleven (11) months of that time it was
reportedly downloading materials to Plaintiff's computer while in the
custody of Mayodan Police Department in North Carolina and in the State
Bureau of Investigation (SBI) office in Greensboro, North Carolina. See
United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-
5, Pages 6 to 7 of 54. As you hear the audio recording, USPO Workman
could care less about the forensic report at the heart of Plaintiff's child

pornography charge. Which is why lies/false-information are at the heart of the entire child pornography case as a whole. Lies, lies, and more lies. Lies mixed with truth, because the federal prosecution couldn't get away with lying 100% so they mixed lies in with truth to bolster the federal prosecution from the very beginning to right now in the United States District Court for the Western District of Virginia, in Roanoke. See United States v. HILL, 1:13-cr-00435, (M.D.N.C. Apr 20, 2022) ECF No. 307, all attachments. Plaintiff is willing to prove to the judge and jury/trier-of-fact in this lawsuit, every lie/false statement ever told by the United States Attorney staff in Plaintiff's entire child pornography case, and every federal prosecutor involved in lying about the Plaintiff to repeatedly punish Plaintiff, to extend his supervised release, and then to push for more extreme supervised release conditions against Plaintiff. See the lies told by both USPO Workman (See **EXHIBIT 1**) and AUSA Inman (See **EXHIBIT 2**). When you heard that recorded conversation where USPO Workman shrugs off whatever Roberta Hill and Brian Hill says and refuses to access the government discovery materials to verify if Plaintiff and his mom were ever telling USPO Workman the truth. The Defendants do not care at all about the evidence, and do not care at all about the discovery materials from the original child pornography case.

21. AUSA Inman (See **EXHIBIT 2**) had insinuated a false assumption/false-statement on this particular paragraph that Plaintiff is somehow addicted to child pornography when that is not the truth at all. See Page 4 of **Exhibit 2** which would be Page 3 without the exhibit page marker. Also on United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23, page 3. EXHIBIT 2 said as citation in part: "*Id. at 1104.* "*A ban on access to pornography is acceptable where 'restriction on sexually stimulating material [is] necessary to treat [the defendant]'s addiction and to deter him*

***from future crimes****.'" Arce, 49 F.4th at 397 (alterations in original)
(quoting United States v. Van Donk, 961 F.3d 314, 323 (4th Cir. 2020))*."
That is not true. Plaintiff is not addicted. Plaintiff had been under mental
health counseling for approximately 7 or 8 years since his release from
imprisonment, and Plaintiff had never been reported to having any
"addiction" Plaintiff had filed an affidavit explaining that he was tricked into
giving a false confession when two police detectives were discussing adult
pornography with the Plaintiff then switching the subject matter to child
pornography in the conversation. Using the Reid Technique and
manipulation to coerce a false confession from the Plaintiff. See United
States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-5,
Exhibit 4. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024)
ECF No. 29, Pages 34 to 36 of 46. Citation: "'Only one important
qualification has been attached to the rule; the **trickery or deceit** must not be
of such nature as to **induce a false confession'** (Inbau and Reid 1967,
p.195)." Prior to the filing by the Defendant AUSA Inman (See **EXHIBIT
2**), Plaintiff had never been insinuated as to being "addicted" to child porn.
In fact Plaintiff was discharged from Radford Sex Offender Counseling and
Treatment because he explained about the download dates from the SBI
report and thus they figured that Plaintiff was asserting that he was
wrongfully convicted due to ineffective assistance of counsel. Plaintiff was
discharged from the group but was not revoked of supervised release by
USPO Jason McMurray. See United States v. HILL, 1:13-cr-00435,
(M.D.N.C. Sep 04, 2015) ECF No. 124. In fact Dr. Keith Hersh said in his
mental evaluation report for pre-sentencing investigation report that Plaintiff
was not a pedophile, and pedophilic disorder was ruled out. See SEALED
evaluation report on filing: United States v. HILL, 1:13-cr-00435, (M.D.N.C.
Sep 02, 2014) ECF No. 23: "Psychiatric Report Received SEALED dated
8/5/2014 in case as to BRIAN DAVID HILL. (Daniel, J) (Entered:

08/21/2014)". Plaintiff is clearly not addicted to child porn. Plaintiff isn't
even addicted to adult pornography as there is no mention of any of this by
USPO McMurray, USPO Kristy Burton, and by USPO Workman. Plaintiff
factually is not addicted to child pornography; he was not ever addicted to
child pornography. He had given a false confession on August 29, 2012, due
to his autism spectrum disorder (ASD) and obsessive compulsive disorder
(OCD). Again, see United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23,
2024) ECF No. 29-5: "Exhibit 4 - Document #29, Attachment #5".

22. AUSA Inman (See **EXHIBIT 2**) had made another false statement in his
motion/position brief which is defamatory/slanderous/libelous. See Page 10
of Exhibit 2 which would be Page 9 without the exhibit page marker. Also on
United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23,
page 9. EXHIBIT 2 said as citation in part: "*Although it has been ten years
since Mr. Hill's conviction, his risk of recidivism remains clear...Mr. Hill's
denial of responsibility and obdurate opposition to supervision underscore
his danger of recidivism.*" All Plaintiff is legally obligated to do under this
sentence is that he simply comply with his supervised release conditions and
term for technical possession of child pornography. Plaintiff had maintained
his innocence since the Pre-Sentence Investigation report mental evaluation.
See SEALED evaluation report on filing: United States v. HILL, 1:13-cr-
00435, (M.D.N.C. Sep 02, 2014) ECF No. 23: "Psychiatric Report Received
SEALED dated 8/5/2014 in case as to BRIAN DAVID HILL. (Daniel, J)
(Entered: 08/21/2014)". Plaintiff had never seen all of the discovery
materials of his child porn case until January 22, 2015, a few months after he
was released from federal imprisonment. It is clear as day that Plaintiff is not
a high risk of recidivism at all. Plenty of facts support this conclusion as
factual basis that Plaintiff is a low risk of recidivism or no risk at all of
recidivism. First of all, Plaintiff had never been accused/charged of

possessing child pornography again since the Mayodan NC police raid on
August 28, 2012, in Rockingham County. That would be around twelve years
and months after that investigation by Mayodan Police Department and
Reidsville NC Police Detective Robert Bridge. Plaintiff had never been
charged with possession of child pornography a second time. Because
Plaintiff clearly is not interested in child pornography. It would be logical
that after over ten years go by since his initial charge in Mayodan in 2013
from what happened in 2012, no detective and no federal agent has ever
accused Plaintiff of wanting to look at child pornography or even wanting to
possess it, and Plaintiff even voluntarily reported his cell phone as to
receiving unsolicited messages right to his former U.S. Probation Officer
Kristy L. Burton of Danville, Virginia. See United States v. HILL, 1:13-cr-
00435, (M.D.N.C. Aug 21, 2015) ECF No. 123, pages 38 of 84. Kristy
Burton admitted under oath that Plaintiff "turned over the phone to" her aka
Kristy Burton. See transcript lines 1 through 18 of Page 38. Only time
Plaintiff had needed to contact his Probation Officer after receiving any
questionable material after an unknown assailant or assailants had sent
threatening messages to his cell phone and then attempted to send possibly
child pornography to Plaintiff's cell phone, he contacted USPO Kristy
Burton promptly and in good faith. The judge was misled by the federal
prosecution when Judge Schroeder assumed that it was on Plaintiff's
"prepaid cell phone" by Tracfone as if the judge assumed it was a disposable
phone. That was not the truth, and it never was the truth. It was not a
disposable prepaid cell phone. It was a Tracfone cell phone on a family plan
by Stella Forinash and Kenneth Forinash. Brian and his mother had cell
phones on that family plan. Stella Forinash and Kenneth Forinash can attest
to this fact. It was not a disposable prepaid cell phone from Tracfone. It was
a family plan from Tracfone that Plaintiff's cell phone was part of back in
2015. That lie or misunderstanding needed to be corrected in the record for

this lawsuit. In fact the cell phone at issue was destroyed at order of the Federal Judge. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Apr 15, 2021) ECF No. 9.

23. AUSA Inman (See **EXHIBIT 2**) had made another false statement in his motion/position brief which is defamatory/slanderous/libelous. See Page 10 of **Exhibit 2** which would be Page 9 without the exhibit page marker. Also on United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23, page 9. **EXHIBIT 2** said as citation in part: "*Mr. Hill's delusional thinking also appears to have motivated his public accusations that his PO fabricated violations against him and his decision to covertly record her.*" Well then Roberta Hill, Stella Forinash, and Kenneth Forinash must all be delusional as well since they all had reviewed over the State Bureau of Investigation case file forensic report at John Scott Coalter's law office in January 22, 2015. See United States v. HILL, 1:13-cr-00435, (M.D.N.C. Apr 20, 2022) ECF No. 307: "MEMORANDUM OF STELLA FORINASH AND KENNETH FORINASH IN FAVOR OF ACTUAL INNOCENCE OF BRIAN DAVID HILL; IN SUPPORT OF WHY BRIAN DAVID HILL SUSPECTS BLACKMAIL OF "JUDGES" AND "OFFICIALS"; AND IN SUPPORT OF GROUND VI - UNCONSTITUTIONAL INTERFERENCE WITH THE STATE COURT PROCESS AND/OR UNWARRANTED USURPATION OF POWER AGAINST THE STATE COURT PROCESS IN VIOLATION OF THE TENTH AMENDMENT OF THE UNITED STATES CONSTITUTION; AND IN SUPPORT OF 2255 MOTION (DOC. #291) by BRIAN DAVID HILL (Attachments: # 1 Attachment 1: "Affidavit Stella April, 2022.pdf", # 2 Attachment 2:"1 Brian Hill's proof of inocence for the court in 2022.pdf", # 3 Attachment 3:"2 Who is Brian Hill-Pictures & Descriptions.pdf", # 4 Attachment 4:"3 Brian's treatment in jail with brittle diabetes, autusm & OCD.pdf", # 5 Attachment 5:"4 Threats.pdf", # 6

Attachment 6:"5 INVESTIGATION 1.pdf", # 7 Attachment 7:"6
INVESTIGATION 2.pdf, # 8 Attachment 8:"7 Danville, VA- Brian
Discovery.pdf", # 9 Attachment 9:"8 ACTUAL INNOCENCE.pdf", # 10
Attachment 10:"9-Child Pornography Through a Computer Virus-Roberts
Law Group.pdf", # 11 Envelope Front Envelope, # 12 Envelope Back
Envelope, # 13 Note to Clerk) (Bowers, Alexis) (Entered: 04/20/2022)".
Plaintiff's whole family is saying things they found after reviewing over the
very evidence in Plaintiff's child pornography case, and the very things they
found in the discovery evidence actually support Plaintiff's claim of
innocence to his original child pornography charge. Claim of being set up,
claim of false confession, and claim of download dates of being 11 months
after his computer was seized. Plaintiff's whole family is filing things
including possibly affidavits. See United States v. Hill, 4:20-cr-00027, (W.D.
Va. Dec 23, 2024) ECF No. 29, pages 31-54. So, the judge and trier-of-fact is
going to have to consider that Plaintiff's entire family have valid points when
they reviewed over the federal criminal case discovery materials and had
known what exactly was in the paper evidence which was used against
Plaintiff or consider Plaintiff's entire family to just being delusional which is
a stretch far exceeding what facts were ever even stated by Dr. Keith Hersh
who originally diagnosed Plaintiff as to having "delusional disorder" back in
August 2014. In fact, Plaintiff never had seen all of the discovery materials
back when he was diagnosed with "delusional disorder" when Plaintiff did
not have access to all of the federal prosecutor's facts which could have
helped Plaintiff explain to Dr. Keith Hersh on the issues in the forensic
report. He was in jail at the time and his Assistant Federal Public Defender
Eric David Placke had never allowed Plaintiff to review over all discovery
materials in the case. Plaintiff had been delusional only at that time because
he didn't even have access to all of the very discovery evidence which had
been used to indict Brian David Hill for possession of child pornography.

Plaintiff pled guilty without ever having prior access to all of the very
discovery evidence which had been used to indict Brian David Hill for
possession of child pornography. It is a wonder why Plaintiff was appearing
to be delusional when he should have had access to the very discovery
materials in his criminal case which were used to say Plaintiff was guilty
when the discovery evidence actually has things in there showing his
innocence.

24. More evidence is being cited by Plaintiff in regard to AUSA Inman (See
**EXHIBIT 2**) who had made the false statement in his motion/position brief
which is defamatory/slanderous/libelous. See Page 10 of **Exhibit 2** which
would be Page 9 without the exhibit page marker. Also on United States v.
Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23, page 9.
**EXHIBIT 2** said as citation in part: "*Although it has been ten years since
Mr. Hill's conviction, his risk of recidivism remains clear...Mr. Hill's denial
of responsibility and obdurate opposition to supervision underscore his
danger of recidivism.*" Plaintiff had nineteen different phone call recordings
with USPO Jason McMurray when he was alive. See United States v. Hill,
4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-1: Exhibit 1 -
Document #29, Attachment #2. Jason McMurray had treated Plaintiff as a
human being and enforced the supervised release conditions with ethics,
dignity, honor, and respect. Plaintiff had not opposed complying with
supervised release at all while he is required to serve his sentence, but he is
opposing being treated as though he were guilty. USPO McMurray had
treated Plaintiff as just somebody who had to comply with his supervised
release conditions, but did not try to punish the Plaintiff over repeatedly
saying he believed he was innocent of his charge of possession of child
pornography. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23,
2024) ECF No. 29; especially page 9 of the additional evidence filing. USPO

McMurray trusted that Plaintiff was not going to break any law and comply
with every reasonable condition (*except the one condition where he would be
forced to say he was guilty of a crime he is not guilty of in United States v.
HILL, 1:13-cr-00435, (M.D.N.C. Sep 04, 2015) ECF No. 124*) that USPO
McMurray had given Plaintiff permission to freely travel into the State of
North Carolina at any time on day trips to see his hospitalized granddad
James Mercer before he died of health issues. See United States v. Hill, 4:20-
cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-4, page 3: "Exhibit 3 -
Document #29 , Attachment #4". USPO McMurray said: "Absolutely. **You
may go visit him anytime**. Hopefully he recovers very soon and comes
home." There you have the undeniable proof/evidence. Plaintiff's former
U.S. Probation Officer Jason McMurray who supervised Plaintiff from 2015
to 2023, said Plaintiff was free to "**go visit him anytime**." That was in the
State of North Carolina. That doesn't sound like a high risk of recidivism
type of individual. This very email proves the opposite of what Defendant
AUSA Inman claimed. Plaintiff's former Probation Officer Jason McMurray
treated Plaintiff as a no risk offender or low risk offender. Jason McMurray
allowed Plaintiff to play video games and watch a Smart TV, and to watch
ROKU because he said in a recorded phone conversation with Plaintiff about
watching the Star Wars TV show named "Mandalorian" which at the time
could only be watched on Disney+ on a ROKU device or game console with
Disney+. Jason McMurray knew Plaintiff was watching "Mandalorian" and
allowed it, despite being streaming media. Jason McMurray allowed Plaintiff
to play video games without being monitored for years. Jason McMurray
allowed Plaintiff to watch ROKU or streaming media without being
monitored for years. Jason McMurray allowed Plaintiff to use a desktop
computer without internet access (offline desktop computer) for legal
pleadings/legal work purposes without being monitored for years. USPO
Kristy L. Burton allowed Plaintiff to use a desktop computer without internet

access (offline desktop computer) for legal pleadings/legal work throughout the entire supervision period of which Kristy Burton had supervised Plaintiff. Plaintiff had never been accused of child pornography again since the police raid in August 2012. Plaintiff had never been charged with child pornography since his case in Federal court. To say he has a high risk of recidivism or even to insinuate it is a fraud upon the court by the Defendant or Defendants. The internet capable devices at issue on April 25, 2024 were formerly approved by Jason McMurray, see **EXHIBIT 7**.

25. On or about Thursday, September 12, 2024, Defendant USPO Workman had proposed modification of supervised release conditions. See **EXHIBIT 3**. Had proposed that Plaintiff and his mother Roberta Hill sign them waiving the right to an attorney and the right to a hearing over the modification. Plaintiff had objected to them (United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 17, 2024) ECF No. 26, pg. 8) and then **EXHIBIT 1** was filed one day after the death of USPO Jason McMurray a former Probation Officer of Plaintiff (See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29, pages 28-33.). The date said the petition under penalty of perjury was executed on October 28, 2024. There were concerns about those conditions. Not only would it force Plaintiff to use the internet in order to be monitored when Plaintiff repeated pushed that he not be forced on the internet since he doesn't want anybody to set him up again. Plaintiff wanted to keep his desktop computer off of the internet since he works on legal pleadings, legal case files, and filings with both the state and federal court. Again, see **EXHIBIT 7**.

26. Plaintiff asserts that he is involved in pending litigation in both federal court and state court. Plaintiff has active appeals before the Court of Appeals of Virginia under cases no. 1424-22-3, 1425-22-3, 0289-22-3, 0290-22-3.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

There are three inactive Court of Appeals of Virginia cases where Plaintiff had filed timely Motions for Delayed Appeal which were filed but haven't been acted upon yet by the judge or panel of judges of that court, the CAV Appeal cases no. are 0313-23-3, 0314-23-3, and 0317-23-3. Plaintiff has one pending federal 2255 motion case appeal before the Fourth Circuit of the United States Court of Appeals under case no. 24-7203.

27. Plaintiff had used a desktop computer off of the internet since his supervised release had started in November, 2014. At some point in November or December, Plaintiff was allowed to use a desktop computer off of the internet since United States Probation Officer Kristy L. Burton, and those permissions continued under United States Probation Officer Jason McMurray from the year of 2015 to the year of 2023. Jason McMurray allowed the Plaintiff to play video games without being monitored as long as he did not put those devices on the internet. Jason McMurray allowed the Plaintiff to watch streaming media without being monitored. Evidence of this was within Exhibit 1 in the pro se filing of Plaintiff under United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-2: "Exhibit 1 - Document #29, Attachment #2". Jason McMurray did tell Plaintiff that the only time he will need the monitoring software is if his computer were approved to use the internet. USPO Jason McMurray never had an issue with Plaintiff watching streaming media in the past since it is impossible to download anything illegal to it, like the ROKU device is not the same thing as a computer or smart phone. Also USPO Haylea Workman had allowed the desktop computer to remain offline.

28. Defendant USPO Workman (See **EXHIBIT 1**) had made a false statement in her petition for modification which is defamatory/slanderous/libelous. See EXHIBIT PAGES 7 OF 8 of **Exhibit 1**.

Also on United States v. Hill, 4:20-cr-00027, (W.D. Va. Nov 15, 2024) ECF No. 11, page 6. said as citation in part: "*Mr. Hill did not stop the audio recording application on his smart phone, or obtain consent to record the above officers' conversation, before he went to his mother's apartment. Therefore, the officers believe that the supervisee committed the offense of Unlawful Interception of Oral Communications, a Class 6 Felony and a violation of Virginia Code § 19.2-62, by recording the officers' conversation when he was not a party to the conversation and did not have their consent.*" Also, Defendant AUSA Inman (See **EXHIBIT 2**) had made a false statement in his motion/position brief which is defamatory/slanderous/libelous. See EXHIBIT PAGES 9 OF 12 of **Exhibit 2**. Also on United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23, page 8. said as citation in part: "*Unbeknownst to the POs, Mr. Hill activated a recorder on one of his phones when they arrived for the home visit. See id. at 6. At some point during the visit ,Mr. Hill left his apartment, leaving the active recorder with the POs, which continued to capture their conversation. See id. This violated Virginia's criminal wire intercept statute, a felony. See Va. Code § 19.2-62.*" That is not true as unexpectedly the Probation Officer asked for the cell phone (Haylea had told Plaintiff verbally that she would get the supervisor to show up over the email from Roberta Hill asking for early termination/release and not over the cell phone, See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-7: Exhibit 6 - Document #29 , Attachment #7) and if the Plaintiff had refused then he would have been charged with a non-compliance supervised release violation. The Plaintiff had no choice but to turn over the cell phone or face revocation for a refusal to submit to search. At the time he did not have a voice recorder that wasn't an internet capable device so all he had was his cell phone. Plaintiff has the evidence that the following statement made by USPO Workman was false and was made under penalty of perjury. Perjury is

a felony and USPO Workman made a false statement under oath, under penalty of perjury. Anyways, see **Exhibit 5** Audio CD (**Exhibit 5**: EXHIBIT PAGES 2 OF 4) and the Table of Contents on **Exhibit 5**: EXHIBIT PAGES 3 and 4 OF 4. It is time for the court to know the truth. The bald-headed supervisor officer (do not know his name so it is logical to identify him by call him bald headed officer or supervisor) as in **EXHIBIT 6**, had shortly saved the recording Plaintiff had initiated covertly because Plaintiff didn't foresee that his cell phone would be searched (taken away) and seized possibly temporarily or forever. The conversation recording Plaintiff had initiated of his home visit on February 28, 2024 (See AUDIO CD in: United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-7, Exhibit 6 — Document #29 , Attachment #7), Plaintiff was told by Haylea Workman that she would get the supervisor over a different matter regarding what Roberta Hill emailed her asking for early termination of Plaintiff's supervised release. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-5, Pages 31-36 of 54. The Plaintiff was never told his phone would be temporarily seized and searched on April 25, 2024. It is clear that Plaintiff would never have been accused of "*Unlawful Interception of Oral Communications*" had the supervisor or USPO Workman never compelled Plaintiff to turn over his phone. Listen to **Audio Track #1**, **EXHIBIT 5**: EXHIBIT PAGES 3 OF 4. He the supervisor had stopped the recording shortly after Haylea last spoke with Plaintiff, then once he, the bald-headed supervisor shortly discovered it was recording, he saved the recording after stopping the recording on the cell phone. So, he authorized that recording by saving it and not asking for its deletion. He did not delete the recording, did not cancel the recording, and he did not ask to have the recording deleted. He consented to that recording and consented to further recording after Plaintiff was compelled to turn over his phone while Plaintiff was recording. Listen to **Audio Track #3**, **EXHIBIT 5**: EXHIBIT PAGES

3-4 OF 4. The bald-headed supervisor said in the audio recording: "**You're welcome to record me**, you don't need to turn off the...flip off the app. **You're free to do that if you want to**." He actually said Plaintiff was free to record him. He gave verbal permission for Plaintiff to record the conversation on that day. The officer saved the recording directly to Plaintiff's phone otherwise the recording would not have existed. Also see **Audio Track #4**, **EXHIBIT 5**: EXHIBIT PAGES 4 OF 4. The officers never told Plaintiff verbally that recording was ever an issue. Never told Plaintiff that they believe he was ever committing any felony over simply recording if that were ever the case. Every recording in the entire Audio CD, Plaintiff had never been accused of unlawful Interception of Oral Communications. Look, if the recording was ever conducted unlawfully, then the supervisor probation officer would have deleted the recording and advised Plaintiff not to do so. The recordings prove the opposite. Instead, the supervisor said to Plaintiff: "**You're welcome to record me, you don't need to turn off the...flip off the app. You're free to do that if you want to**." In fact, Plaintiff and his mother Roberta Hill are filing affidavits about this very fact where supervisor said Plaintiff can record the conversation. See **EXHIBIT 4**: "Declaration of Brian David Hill – December 17, 2024" and "Declaration of Roberta Hill - December 10, 2024". Both U.S. Probation Officers never verbally told Plaintiff that he had violated Virginia's criminal wire intercept statute, a felony. See Va. Code § 19.2-62. Plaintiff was never told anything about committing any felony. Instead, the supervisor probation officer saved the recording to Plaintiff's cell phone and told the Plaintiff that: "You're welcome to record me, you don't need to turn off the...flip off the app. You're free to do that if you want to." Again, see **EXHIBIT 4**: "Declaration of Brian David Hill – December 17, 2024" and "Declaration of Roberta Hill - December 10, 2024". This is the most dangerous/injurious form of defamatory/slanderous/libelous statements made by both Defendant USPO

Workman (See **EXHIBIT 1**) and Defendant AUSA Inman (See **EXHIBIT 2**). These statements are falsely accusing the Plaintiff of a felony over recording his own conversations in his own home when attempting to protect himself from being lied about by a proven lying probation officer. In fact, Plaintiff's former probation officer Kristy Burton lied about Plaintiff in federal court. So, Plaintiff has an extremely good reason to record his conversations when a past probation officer lied about Plaintiff under penalty of perjury. See United States v. HILL, 1:13-cr-00435, (M.D.N.C. Dec 04, 2017) ECF No. 137: "DECLARATION entitled "fifth Additional Evidence Declaration" filed by BRIAN DAVID HILL re 128 Memorandum. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Certificate of Service, # 9 Envelope - Front and Back) (Civil Case number: 17CV1036) (Garland, Leah) (Entered: 12/06/2017)". It is clear that USPO Kristy L. Burton claimed Brian was lectured about not filing documents with the court, so he cussed out his probation officer by calling her a "jerk" and an "asshole". Those were the two words he called his former Probation Officer Kristy Burton. That was not the truth either. The truth was that Kristy Burton told Brian not to text message his lawyer and that he couldn't text message anybody, anymore, despite there being no condition prohibiting simple text messages. So, Plaintiff had a meltdown and called his former probation officer those two words. She was a jerk because she lied to the federal judge, lied to the clerk, and lied for the general public to read. So, Plaintiff has a very important reason to record his conversations when a probation officer openly lied to a federal judge in 2015 regarding why Plaintiff had told two words to his probation officer and had a meltdown in her presence. Plaintiff is tired of being lied about by our federal government. Lying is wrong. Plaintiff is tired of federal probation lying about the Plaintiff to justify whatever they ask a federal judge to do next.

29. What led up to the Defendant USPO Workman filing her lies in Document #11 (United States v. Hill, 4:20-cr-00027, (W.D. Va. Nov 15, 2024) ECF No. 11) started from **EXHIBIT 3**, where Haylea Workman sends an email to Roberta Hill for the Plaintiff. That email had an attachment called: "Hill, Brian - Prob 49.docx". It was converted to a PDF file and is being printed in **EXHIBIT 3** for this lawsuit. Those were the original proposed conditions by Defendant USPO Workman which Defendant USPO Workman had pushed for, and Plaintiff had his mother email Plaintiff's objections/issues to those proposed conditions. Then Defendant USPO Workman filed her petition for modification (See **EXHIBIT 1**) which the affidavit was executed on October 28, 2024, a day after the death of USPO Jason McMurray on October 27, 2024. Some of the issues was that USPO Workman clearly wanted to search Brian's mother's apartment without giving Roberta Hill (Brian's mother) the enjoyment/protections of the Fourth Amendment of the United States Constitution and wanted to search every apartment of the whole triplex where Plaintiff lives in only one apartment. Even though two apartments can be accessed, Roberta Hill can freely lock the door at the staircase area to keep Plaintiff in his own apartment and cannot have access to Roberta Hill's apartment. Also, since the supervised release even began, Brian's mother Roberta Hill always had password protected her computers, and password protected her Wi-Fi router. Even the supervisor Probation Officer verified that no Wi-Fi can be accessed without the password, but had concerns that Plaintiff could theoretically go to a fast-food restaurant to possibly use the internet in the future. Plaintiff has no vehicle and does not drive or operate a motor vehicle. It is clear as day that these concerns were unfounded. Plaintiff had never been charged with possession of child pornography since his original charge in federal court in 2013. See United States v. HILL, 1:13-cr-00435, (M.D.N.C. Nov 25, 2013)

ECF No. 1. It is clear that when somebody has never tried to possess child pornography after his original charge in November 2013, and now it is the year of 2025, it is clear that Plaintiff is not a high recidivist risk. Plaintiff has no addiction to child pornography and does not intend to seek it. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29, pages 1-35. Plaintiff pled guilty to possession of child pornography because he was accused of technically possessing it. Plaintiff's family were told by Disability Rights of NC that his public defender urged Plaintiff to plead guilty to child porn because they said it was on his computer, and Plaintiff technically possessed it. Disability Rights of NC pretty much said that it didn't matter whether Plaintiff had bought a used computer, they claimed Plaintiff had it then he technically possessed it. So, Disability Rights of NC along with Eric David Placke the Assistant Federal Public Defender pretty much told Plaintiff to plead guilty to technical possession of child porn. Plaintiff had never wanted to falsely state that he put those files there, and that was why Plaintiff kept filing pro se motions over the years in his federal case. When Plaintiff finally got to see the State Bureau of Investigation (SBI) forensic report on January 22, 2015, he wondered why he was even on federal supervised release by the United States Probation Office. The Plaintiff checked the federal law which states that for a Class C felony, he should have only served not more than three years of supervised release. See 18 USC § 3583 "*Inclusion of a term of supervised release after imprisonment*". It also says: "*(b) Authorized Terms of Supervised Release.-Except as otherwise provided, the authorized terms of supervised release are-*" and "*(2) for a Class C or Class D felony, **not more than three years**￼*". Then it said under 18 U.S. Code § 3559 - Sentencing classification of offenses, it says: "*(a)Classification.—An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is—*", and "*(3) less than twenty-five years but ten or*

*more years, as a Class C felony*". In fact, when Plaintiff's family had researched whether Plaintiff's conviction was a Class C felony, it confirms that indeed it was a Class C felony. It said: "In the United States, the federal charge of possessing child pornography is a Class C felony if the victim is under age 12, and a Class D felony if the victim is between 12 and 18". **So Plaintiff shouldn't have even been under supervised release after November 2017 according to the federal statutes.** It is clear that Plaintiff had been through lies and misrepresentation and was given more supervised release than what even the federal law had permitted. The U.S. Government kept using fraud, misrepresentation of the facts and the law, and lies against the Plaintiff to make his life worse and worse.

30. The Defendants know that Roberta Hill had been sending evidence to Jason McMurray before he was deceased, See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-4, pages 1-15. The Defendants know that Roberta Hill had been sending monthly reports by email to his Probation Officers. The Defendants also know that Plaintiff's family has evidence which contradicts the lies and narratives of the U.S. Government. The Defendants knows that the Plaintiff has evidence which contradicts the lies and narratives of the U.S. Government. They want the power to search and seize not only Plaintiff's legal papers and digital legal documents/pleadings, but to seize physical evidence and legal papers to thwart Plaintiff's ability to disprove the lies and false narratives of the U.S. Government against the Plaintiff. They want the power to quash Plaintiff's constitutional and civil rights by silently taking away his due process of law. The Defendants clearly want to seize any evidence favorable to Plaintiff before he may even file it in the future or send to any investigators. They can care less about attorney/client privilege.

31. Plaintiff had asked the court appointed attorney Nia Videl to subpoena
his probation file concerning the records during the period of which Jason
McMurray had supervised Plaintiff Brian David Hill from 2015 until October
or November of 2023. So, for seven or eight years, Jason McMurray had
supervised Plaintiff on supervised release for a long period of time. The
Plaintiff had asked for the records of his probation to prove that he was
authorized to use the very internet capable devices at issue on April 25, 2024.
See **EXHIBIT 5**. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec
23, 2024) ECF No. 29-7: "Exhibit 6 - Document #29, Attachment #7".
Attorney Nia Vidal was able to find out that the Plaintiff's internet capable
devices were approved by USPO Jason McMurray before he was deceased
and removed from the supervision of Plaintiff a year before USPO
McMurray's death. See **EXHIBIT 7**: EXHIBIT PAGES 2 OF 4. She said in
part of the citation of the whole letter: "I am in receipt of your letters
requesting that I subpoena the U.S. Probation Office's files regarding your
communications with your former probation officer, Jason McMurray. Given
the nature of the hearing scheduled on February 18, 2025, which is whether
Judge Cullen will modify the conditions of your supervised release, I am not
inclined to do that. **According to the probation office**, **there is one note
from Mr. McMurray regarding your use of devices**, which was that you
**had a computer that was not connected to the internet**. The **probation
office acknowledges that Mr. McMurray gave you permission to have
and use your devices**." Again, the attorney said: "The **probation office
acknowledges that Mr. McMurray gave you permission to have and use
your devices**." So, the very incident on April 25, 2024, which led up to the
modification petition (**EXHIBIT 1**, United States v. Hill, 4:20-cr-00027,
(W.D. Va. Nov 15, 2024) ECF No. 11), was based on assumptions and false
pretenses. Plaintiff was never in violation of his supervised release on April
25, 2024, because USPO Jason McMurray had indeed approved of the very

devices which did not use the internet and thus were not a violation even if they were internet capable devices. The entire basis for the petition for modification was erroneous or false or both.

32. Plaintiff noticed in the letter from Attorney Nia Vidal that the U.S. Probation Office wants more conditions which target not just the Plaintiff but Plaintiff's family members, friends and caregiver/mother. See **EXHIBIT 7**: EXHIBIT PAGES 3-4 OF 4. They want to have the power to search and seize anything and everything including the legal papers and legal documents of Plaintiff including any evidence he may store on any discs or storage devices. The Defendants seem to be planning on more search and seizure powers over not just the Plaintiff and his apartment, but the power to demand they search every apartment of the triplex, and force Plaintiff to tell every occupant of every apartment that they may face searches and seizures without a warrant, and if any person in any apartment says no to the search and seizure, then Plaintiff faces a revocation of supervised release. This jeopardizes his family member's fourth amendment right to privacy and the right to be protected against unreasonable searches and seizures, and that no warrants shall issue but upon probable cause. This jeopardizes any stranger's fourth amendment right to privacy and the right to be protected against unreasonable searches and seizures, and that no warrant shall issue but upon probable cause. So, if any apartment is rented out by Roberta Hill to anybody, then they are subject to warrantless searches for any reason by the U.S. Probation Office or even no reason. Plaintiff is the only one subject to supervised release. His immediate family members Roberta Hill and his grandparents are not subject to a criminal conviction and serve no sentence. For them to be subject to a warrantless search without a warrant if they simply are located around or near the Plaintiff is crazy and unreasonable. This is putting Plaintiff's entire family on probation; his family is now on

supervised release even though they are not defendants in Plaintiff's criminal case by the federal prosecutor. This goes beyond the scope and jurisdiction over the Plaintiff for what crime he was accused of and convicted of. The U.S. Probation Office wants to search every apartment and every location the Plaintiff is located, not just in what he has access to but over the place he is located at. It is clear that the lies/false-statements by the U.S. Attorney Office by and through AUSA Inman (See **EXHIBIT 2**) and the lies/false-statements by USPO Workman (See **EXHIBIT 1**) intend upon both interfering with and gaining access to Plaintiff's attorney-client privileged communications despite attorney-client materials being protected by law. It is clear that the lies/false-statements by the U.S. Attorney Office by and through AUSA Inman (See **EXHIBIT 2**) and the lies/false-statements by USPO Workman (See **EXHIBIT 1**) intend to prejudice the federal judge to work against Plaintiff in his case and prevent a fair and impartial justice as required by the U.S. Constitution and by law. The Defendants intend to say enough false statements to prejudice the U.S. District Court's Hon. Thomas T. Cullen to work against Plaintiff and block/ignore any and all evidence favorable to the Plaintiff. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Jan 07, 2025) ECF No. 30. It is impossible for this judge to be impartial and not biased, and not be prejudicial with the fraud and false statements submitted by both AUSA Inman (See **EXHIBIT 2**) and USPO Workman (See **EXHIBIT 1**).

33. Law has clearly established that fraud upon the court deprives a party of due process of law under the U.S. Constitution, Fifth Amendment, can prejudice the judge, and prevent a fair access to justice. See Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991) ("Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); Universal Oil Products

Co. v. Root Refining Co., 328 U.S. 575, 580 (1946). This "historic power of
equity to set aside fraudulently begotten judgments," Hazel-Atlas, 322 U.S.,
at 245, is necessary to the integrity of the courts, for "tampering with the
administration of justice in [this] manner . . . involves far more than an injury
to a single litigant. It is a wrong against the institutions set up to protect and
safeguard the public." Id., at 246. Moreover, a court has the power to conduct
an independent investigation in order to determine whether it has been the
victim of fraud. Universal Oil, supra, at 580."). See *Hazel-Atlas Co. v.
Hartford Co.*, 322 U.S. 238, 244-45 (1944) ("From the beginning there has
existed alongside the term rule a rule of equity to the effect that under certain
circumstances, one of which is after-discovered fraud, relief will be granted
against judgments regardless of the term of their entry. *Marine Insurance Co.*
v. *Hodgson*, 7 Cranch 332; *Marshall* v. *Holmes*, 141 U.S. 589. This equity
rule, which was firmly established in English practice long before the
foundation of our Republic, the courts have developed and fashioned to
fulfill a universally recognized need for correcting injustices which, in
certain instances, are deemed sufficiently gross to demand a departure from
rigid adherence to the term rule. Out of deference to the deep-rooted policy
in favor of the repose of judgments entered during past terms, courts of
equity have been cautious in exercising their power over such
judgments. *United States* v. *Throckmorton*, 98 U.S. 61. But where the
occasion has demanded, where enforcement of the judgment is
"manifestly unconscionable," *Pickford* v. *Talbott*, 225 U.S. 651, 657, they
have wielded the power without hesitation. Litigants who have sought to
invoke this equity power customarily have done so by bills of review or bills
in the nature of bills of review, or by original proceedings to enjoin
enforcement of a judgment.")

## JURISDICTION AND VENUE

34. This Court has both the subject matter jurisdiction over this action, legal jurisdiction over this action, and personal jurisdiction over the parties pursuant to 28 U.S. Code § 1331, 42 U.S. Code § 1983 (Civil action for deprivation of rights) which is a civil rights federal statute, and 28 U.S.C. § 1651 (The All Writs Act). All parties reside in the Western District of Virginia where this lawsuit is being filed. Therefore, all parties are within the personal jurisdiction and territorial jurisdiction of this Court. Plaintiff is a citizen of the United States and reside within the Western District of Virginia. Defendants are also citizens of the United States and reside within the Western District of Virginia.

35. The United States District Court for the Western District of Virginia is an appropriate venue, because Defendants Haylea Workman and Drew Inman are subject to personal jurisdiction of the Western District of Virginia. Both Defendants work and reside in the Western District of Virginia. Both Defendants conduct and/or misconduct at issue in this lawsuit happened within the boundaries of the Western District of Virginia.

36. The United States District Court for the Western District of Virginia is an appropriate venue, because the events giving rise to the claim or claims for relief are situated in Virginia.

37. The harm caused by the Defendants, was experienced, in Virginia.

38. Defendants USPO Workman and AUSA Drew Inman have willfully

engaged in defrauding the Court and in depriving the Plaintiff of due process
of law and of other Constitutional rights of the United States of America.

39. Defendants USPO Workman and AUSA Drew Inman had willfully
engaged in defrauding the Court and in depriving the Plaintiff of free speech
and freedom of press.

40. Drew Inman's and Haylea Workman's acts as alleged herein, and the
ongoing direct results of those acts, have caused and will continue to cause
irreparable harm to Brian David Hill and his family, friends, and associates
in an amount Brian David Hill cannot ascertain, leaving Plaintiff Brian David
Hill with no adequate remedy at law other than this lawsuit. Even the court
appointed lawyer Nia Videl will not do anything to remedy the Plaintiff of
the fraud upon the court perpetuated by Defendants. See **EXHIBIT 7**.

41. Unless AUSA Drew Inman and USPO Haylea Workman are
preliminarily and permanently enjoined from further deprivation of all of
Plaintiff Brian David Hill's constitutional rights, Plaintiff Brian David Hill
will be irreparably harmed, and Plaintiff Brian David Hill is thus entitled to
preliminary and permanent injunctive relief against further civil rights
infringement by the Defendants, pursuant to 42 U.S. Code § 1983 (Civil
Rights) and 28 U.S. Code § 1651 (All Writs Act).

42. AUSA Drew Inman had violated Virginia State Bar Rule 3.8. See *Rule
3.8 - Additional Responsibilities Of A Prosecutor*, Va. R. Sup. Ct. 3.8 ("**A
lawyer engaged in a prosecutorial function shall:(a) not file or maintain
a charge that the prosecutor knows is not supported by probable
cause**").

43. AUSA Drew Inman had violated Virginia State Bar Rule 4.1. See *Rule 4.1 - Truthfulness In Statements To Others*, Va. R. Sup. Ct. 4.1 ("**In the course of representing a client a lawyer shall not knowingly:(a) make a false statement of fact or law; or(b) fail to disclose a fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.**")

IV. **RELIEF**

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE

**(Defendants lying about and omitting a portion of Plaintiff's supervision history to try to take away Plaintiff's first amendment rights)**

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs

45. Defendants USPO Workman (United States v. Hill, 4:20-cr-00027, (W.D. Va. Nov 15, 2024) ECF No. 11) and AUSA Inman (United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 06, 2024) ECF No. 23) had made false statements to the U.S. District Court in order to take away Plaintiff's first amendment right to freedom of speech and freedom of press. They both insinuated without proof of claim or claims that Plaintiff somehow uploaded a video or videos to the internet. They both insinuated without proof of claim or claims that Plaintiff somehow had been writing articles on the internet. Both already understand that Roberta Hill had been emailing the monthly reports of Plaintiff and had been emailing evidence to Plaintiff's former Probation officer Jason

McMurray. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Dec 23, 2024) ECF No. 29-4, pages 1-15 of 15. Defendants also understand that the family members of the Plaintiff are not convicted of crimes and are not subject to supervised release. Yes, Plaintiff's mother was making sure that since the year of 2014 to have password protected her Wi-Fi router and password protected her computers, which is the appropriate action to prevent the Plaintiff from access to the internet, making sure that her son complies with his supervised release conditions. The Defendants also understand that the Plaintiff's family and friends and associates are legally not prohibited from posting things on the internet about the Plaintiff's criminal and/or civil cases. The false statements made by both Defendants threaten the Plaintiff's constitutional rights under the first amendment regarding both free speech and freedom of press. The Plaintiff is not prohibited from contacting the members of the press/media by phone or mailings. The Plaintiff is not prohibited from contacting the state courts and federal courts by phone or mailings. The Plaintiff is not prohibited from contacting the members or agents or employees of the federal government by phone or mailings. The Plaintiff is not prohibited from contacting the members or agents or employees of the state government by phone or mailings. The Plaintiff is not prohibited from contacting the members or agents or employees of the local or county government by phone or mailings. The claims by the Defendants as to the Plaintiff somehow using the internet over postings not even under the name of the Plaintiff when Plaintiff asks his family to research to figure out what exactly the Defendants are talking about, it is an insinuation at best without proof. It is a baseless claim. They are engaging in these types of claims to blame the Plaintiff for anything on the internet they do not like. So, if one of Plaintiff's friends or family members makes a post online about Plaintiff's case or uploads a video of the Plaintiff, then the U.S. Probation Office will blame the Plaintiff like what is shown in **EXHIBIT 1** and **EXHIBIT 2**. Plaintiff cannot afford a lawyer, so

his mother engages in secretary type work such as filing Plaintiff's monthly reports with his probation officer on Plaintiff's behalf, files documents with the Virginia courts on Plaintiff's behalf, files documents with the Court of Appeals of Virginia on Plaintiff's behalf, and contacts government officials on Plaintiff's behalf as an assistant or secretary. None of that violates the Plaintiff's conditions of supervised release. This doesn't put Plaintiff at a high recidivism risk. Plaintiff clearly has a due process of law constitutional right to have access to the courts whether he is in prison or on probation. Defendants are intending to make such claims of Plaintiff possibly using the internet without proof by claiming Plaintiff was somehow posting articles and videos to threaten the first amendment right of Plaintiff by going after his family, associates, and friends, then blame any of their activities on the Plaintiff as if they are a magical theoretical extension of the Plaintiff's body and soul.

46. It is clear that the Defendants are violating the First Amendment right of the United States Constitution by not just depriving the Plaintiff of free speech and freedom of press, but also depriving the Plaintiff's friends, family, and associates of free speech and freedom of press. It is clear that the false statements and defamatory/libelous/slanderous typed statements by both Defendants are an oppressive method by excuse to take away Plaintiff's constitutional rights.

### CLAIM TWO
### (Defendants lying about and omitting a portion of Plaintiff's supervision history to try to take away Plaintiff's fifth amendment rights to due process of law including attorney/client privilege)

47. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

48. Plaintiff had proven with clear and convincing evidence in this complaint

and outside of this complaint that Defendants had made defamatory/slanderous/libelous statements about Plaintiff in order to add more restrictions to Plaintiff's supervised release. This conduct by Defendants puts Plaintiff at serious risk of being deprived of attorney/client privilege. This misconduct by Defendants, including **EXHIBIT 3** and **EXHIBIT 7** making false statements clearly are intending to target Plaintiff's due process of law and to deprive the Plaintiff of his due process of law. Using the power of search and seizure to interfere with, obstruct, and prevent Plaintiff's procedural due process of law and substantive due process of law. The Defendants clearly want the federal judge to rubber stamp or approve the further deprivation of Plaintiff's constitutional rights and ignore seven to eight years of any compliance while Plaintiff was supervised by Senior United States Probation Officer Jason McMurray. By ignoring the long history of Plaintiff's compliance and only focusing on certain things such as allegations of any non-compliance, it limits the scope of facts which the U.S. District Court needs to make an impartial unbiased determination regarding any issue brought before the Court. The false statements made by the Defendants prevents the Plaintiff from having due process of law. It deprives the Plaintiff of due process of law. Fraud upon the court is being used to prevent the Plaintiff of enjoying and exercising his constitutional right to due process of law under the Fifth Amendment of the United States Constitution.

## CLAIM THREE
**(Defendants engaged in defrauding the court (fraud upon the court) in order to prejudice U.S. District Judge Thomas T. Cullen to take away Plaintiff's fifth amendment rights to due process of law including attorney/client privilege)**

49. Plaintiff re-alleges and incorporates by reference all preceding

paragraphs.

50. Defendant AUSA Inman and Defendant USPO Haylea Workman had
engaged in a fraud upon the court. The fraud is to the extent where it had
caused the prejudicing of Hon. Thomas T. Cullen to ignore evidence and any
filings by the Plaintiff. See United States v. Hill, 4:20-cr-00027, (W.D. Va.
Jan 07, 2025) ECF No. 30. Causing Plaintiff to be at fear of facing a potential
kangaroo court hearing (*jumping over the evidence like a kangaroo*) on
February 18, 2025, or on any other designated date. Plaintiff fears that he
will not face a fair and impartial hearing due to the false statements by both
Defendants prejudicing the judge. When Plaintiff refers to a kangaroo
hearing, no disrespect, he means a hearing where only one party's evidence
will be considered while the other party's evidence will be overlooked,
ignored, and not considered. The prejudice of Plaintiff being set up with
child porn and had been forced to plead guilty, and then the federal
prosecutor can just make up whatever claims they want to because Plaintiff
having to plead guilty to technical possession of child pornography. They can
claim anything they want in regard to any facts of guilt even if it is outright
false. Thus, the judge will be angry at Plaintiff and want to punish Plaintiff
repeatedly due to the beliefs triggered by the false statements made by the
federal prosecution. Frauds upon the court do lead to a judge being
prejudiced of a party in a case litigation. See United States v. Sciuto, 521
F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or
prejudice is based, not on section 144, but on the Due Process Clause.").
Fraud upon the court can prejudice a judge by making the orders and
judgment of that court void and of no legal force or effect. See Herring v.
U.S., 424 F.3d 384, 387 n.1 (3d Cir. 2005) ("The Ninth Circuit noted that
"one species of fraud upon the court occurs when an `officer of the court'
perpetrates fraud affecting the ability of the court or jury to impartially judge

a case." Pumphrey v. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir.
1995); see also Weese v. Schukman, 98 F.3d 542, 553 (10th Cir. 1996)
(noting that "fraud on the court should embrace only that species of fraud
which does or attempts to, subvert the integrity of the court itself, or is a
fraud perpetrated by officers of the court") (citation omitted); Kerwit Med.
Prods., Inc. v. N. H. Instruments, Inc., 616 F.2d 833, 837 (11th Cir. 1980)
(same).")

51. There is no good reason to make false statements to a federal court. Even
if it is against a criminal defendant. False statements may help to wrongfully
punish a criminal defendant and a vigilante can make such false statements to
give a criminal defendant what he/she perceives of what is deserved, a
vigilante doesn't know or understand all the facts of somebody accused of a
crime. USPO Workman is behaving like a defacto vigilante thinking that the
Defendant got off easy and deserves more punishment. It is the mindset of
those lying on the side of law enforcement that they think the ends justify the
means, and that lying is acceptable to punish who they perceive as a "bad
guy". However, if the law enforcement side becomes a law breaker and lies
to the court, then that makes them as bad as the very criminals they claim to
prosecute and target in a court of law. See *Olmstead v. United States*, 277
U.S. 438, 483 (1928) ("And if this Court should permit the Government, by
means of its officers' crimes, to effect its purpose of punishing the
defendants, there would seem to be present all the elements of a ratification.
If so, the Government itself would become a lawbreaker."). See *Olmstead v.
United States*, 277 U.S. 438, 485 (1928) ("Decency, security and liberty alike
demand that government officials shall be subjected to the same rules of
conduct that are commands to the citizen. In a government of laws, existence
of the government will be imperiled if it fails to observe the law
scrupulously. Our Government is the potent, the omnipresent teacher. For

good or for ill, it teaches the whole people by its example. Crime is contagious. **If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.** To declare that in the administration of the criminal law the end justifies the means — **to declare that the Government may commit crimes in order to secure the conviction of a private criminal** — **would bring terrible retribution.** Against that pernicious doctrine this Court should resolutely set its face.").

## CLAIM FOUR

**(Defendants engaged in defrauding the court (fraud upon the court) in order to prejudice U.S. District Judge Thomas T. Cullen to work against Plaintiff in his criminal case and put Plaintiff in fear of facing a kangaroo court hearing on February 18, 2025, where the judge will only listen to the Defendants because of the prejudice and lies. Setting up the Plaintiff to forever be given miscarriages of justice at any time for any reason.)**

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

53. Defendants engaged in defrauding the court (fraud upon the court) in order to prejudice U.S. District Judge Thomas T. Cullen to work against Plaintiff in his criminal case and put Plaintiff in fear of facing a kangaroo court hearing on February 18, 2025, where the judge will only listen to the Defendants because of the prejudice and lies. Setting up the Plaintiff to forever be given miscarriages of justice at any time for any reason. Stacking up fraudulent criminal records on the Plaintiff.

54. The Defendants are setting the precedent with the falsehoods to send the message that truth does not matter, compliance with supervised release does

not matter, and that Plaintiff will be further punished no matter what the facts are and no matter what the law says. Even though Plaintiff wants to comply with supervised release, it does not matter to the Defendants as they will move to invalidate the hard work and effort to comply with supervised release. The Defendants are making it ineffective to comply with supervised release by setting a bar so high that the Defendant will never reach that high bar. They are symbolically dangling a carrot in front of Plaintiff causing him to constantly run on a hamster wheel over the carrot being dangled in front of him symbolically by the Defendants. Compliance does matter, and when Defendant complies with supervised release, it does matter. The lying by the Defendants is detrimental to the Plaintiff complying with supervised release.

55. It causes any supervisee to feel like it may be meaningless to comply with supervised release if the U.S. Probation Office can just lie about who they supervise to cause violations and set people up to be revoked. Lying is the opposite of an effective supervised release. It is ineffective for the purposes of things like the reintegration of a criminal convict back to society, rehabilitation, forgiveness, justice, and making sure every defendant on supervised release does not break the law.

## CLAIM FIVE
### (Defendants engaged in unethical misconduct, lied to the court, and conspired to lie to the court in order to deprive Plaintiff Brian David Hill of his constitutional rights under the color of law)

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57. Defendant AUSA Inman had not complied with VIRGINIA RULES OF PROFESSIONAL CONDUCT, RULE 4.1(a) - Truthfulness In Statements

To Others. AUSA Inman had made false statements to this court. Defendant AUSA Inman had violated VIRGINIA RULES OF PROFESSIONAL CONDUCT, RULE 4.1(a). Misconduct is proven and documented.

58. Defendant AUSA Inman had not complied with VIRGINIA RULES OF PROFESSIONAL CONDUCT, Rule 3.8 - Additional Responsibilities Of A Prosecutor. AUSA Inman had made false statements to this court and had prosecuted the petition to modify the conditions of supervision over internet capable devices on April 25, 2024, which were indeed already approved by the U.S. Probation Officer Jason McMurrray. See **EXHIBIT 7**. Defendant AUSA Inman had violated VIRGINIA RULES OF PROFESSIONAL CONDUCT, RULE 3.8. Misconduct is proven and documented.

59. Defendant AUSA Inman and Defendant USPO Haylea Workman had engaged in a fraud upon the court. The fraud is to the extent where it had caused the prejudicing of Hon. Thomas T. Cullen to ignore evidence and any filings by the Plaintiff. See United States v. Hill, 4:20-cr-00027, (W.D. Va. Jan 07, 2025) ECF No. 30. Causing Plaintiff to be at fear of facing a potential kangaroo hearing on February 18, 2025, or any other designated date. Plaintiff fears that he will not face a fair and impartial hearing due to the false statements by both Defendants prejudicing the judge. When Plaintiff refers to a kangaroo hearing, no disrespect, he means a hearing where only one party's evidence will be considered while the other party's evidence will be overlooked, ignored, and not considered. The prejudice of Plaintiff being set up with child porn and being forced to plead guilty, and then the federal prosecutor can just make up whatever claims they want to because of Plaintiff having to plead guilty to technical possession of child pornography. Thus the judge will be angry at Plaintiff and want to punish Plaintiff repeatedly due to the beliefs triggered by the false statements made by the

federal prosecution. Frauds upon the court do lead to a judge being

prejudiced of a party. See United States v. Sciuto, 521 F.2d 842, 845 (7th

Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not

on section 144, but on the Due Process Clause."). Fraud upon the court can

prejudice a judge by making the orders and judgment of that court void and

of no legal force or effect. See Herring v. U.S., 424 F.3d 384, 387 n.1 (3d

Cir. 2005) ("The Ninth Circuit noted that "one species of fraud upon the

court occurs when an `officer of the court' perpetrates fraud affecting the

ability of the court or jury to impartially judge a case." Pumphrey v.

Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir. 1995); see also Weese v.

Schukman, 98 F.3d 542, 553 (10th Cir. 1996) (noting that "fraud on the court

should embrace only that species of fraud which does or attempts to, subvert

the integrity of the court itself, or is a fraud perpetrated by officers of the

court") (citation omitted); Kerwit Med. Prods., Inc. v. N. H. Instruments,

Inc., 616 F.2d 833, 837 (11th Cir. 1980) (same).").

60. There is no good reason to make false statements to a federal court. Even

if it is against a criminal defendant. False statements may help to wrongfully

punish a criminal defendant and a vigilante can make such false statements to

give a criminal defendant what he/she perceives of what is deserved, a

vigilante doesn't know or understand all the facts of somebody accused of a

crime. USPO Workman is behaving like a defacto vigilante thinking that the

Defendant got off easy and deserves more punishment. It is the mindset of

those lying on the side of law enforcement that they think the ends justify the

means, and that lying is acceptable to punish who they perceive as a "bad

guy". However, if the law enforcement side becomes a law breaker and lies

to the court, then that makes them as bad as the very criminals they claim to

prosecute and target in a court of law. See *Olmstead v. United States*, 277

U.S. 438, 483 (1928) ("And if this Court should permit the Government, by

means of its officers' crimes, to effect its purpose of punishing the defendants, there would seem to be present all the elements of a ratification. If so, the Government itself would become a lawbreaker."). See *Olmstead v. United States*, 277 U.S. 438, 485 (1928) ("Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. **If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.** To declare that in the administration of the criminal law the end justifies the means — **to declare that the Government may commit crimes in order to secure the conviction of a private criminal** — **would bring terrible retribution.** Against that pernicious doctrine this Court should resolutely set its face.").

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court grant Brian David Hill's claim(s) for relief herein as follows:

1. Preliminarily and permanently enjoin and restrain Defendant Drew Inman, and Drew Inman's officers, agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Drew Inman, from directly or indirectly making false statements of Plaintiff Brian David Hill;

2. Preliminarily and permanently enjoin and restrain Haylea Workman, and Haylea Workman's officers, agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Haylea Workman, from directly or indirectly making false statements of Plaintiff Brian David Hill;

3. Preliminarily and permanently enjoin and restrain Defendant Drew Inman, and Drew Inman's officers, agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Drew Inman, from directly or indirectly depriving Plaintiff Brian David Hill of due process of law;

4. Preliminarily and permanently enjoin and restrain Haylea Workman, and Haylea Workman's officers, agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Haylea Workman, from directly or indirectly depriving Plaintiff Brian David Hill of due process of law;

5. Preliminarily and permanently enjoin and restrain Defendant Drew Inman, and Drew Inman's officers, agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Drew Inman, from directly or indirectly depriving Plaintiff Brian David Hill of free speech and freedom of press;

6. Preliminarily and permanently enjoin and restrain Haylea Workman, and Haylea Workman's officers, agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Haylea Workman, from directly or indirectly depriving Plaintiff Brian David Hill of free speech and freedom of press;

7. Direct Drew Inman and Haylea Workman to preserve, retain, and deliver to Plaintiff in hard copies or electronic copies:

a. All evidence and documentation relating in any way to Drew Inman's and Haylea Workman's false statements and any conspiracy or activities of attempting to deprive the Plaintiff of due process of law, in any form, including, without limitation, all such evidence and documentation relating to the supervision of the Plaintiff;

b. All evidence and documentation relating in any way to Drew Inman's and Haylea Workman's false statements and any conspiracy or activities of attempting to deprive the Plaintiff of freedom of speech and freedom of press, in any form, including, without limitation, all such evidence and documentation relating to the supervision of the Plaintiff;

8. Direct both Defendants Drew Inman and Haylea Workman to stop lying about Plaintiff in this federal court, or in any federal court; and to stop producing any further false statements to achieve any aim in the judicial system including in both the federal and/or state courts which all derived

from the federal supervision of Plaintiff;

9. To sanction and penalize both Defendants Drew Inman and Haylea Workman for their frauds upon the court to prevent these types of frauds from ever happening again;

10. To consider terminating the supervised release of Brian David Hill, the Plaintiff, as a sanction and/or penalty for both Defendants Drew Inman and Haylea Workman in their perpetuation of fraud upon the court;

11. To make a complaint and/or referral to the Virginia State Bar to investigate Defendant Assistant U.S. Attorney Drew Inman's misconduct but not limited to violations of State Bar Rules: Va. R. Sup. Ct. 3.8 and Va. R. Sup. Ct. 4.1;

12. To make a referral to the Office of the Inspector General of the United States Department of Justice (DOJ) to investigate Defendant Assistant U.S. Attorney Drew Inman's misconduct but not limited to violations of State Bar Rules: Va. R. Sup. Ct. 3.8 and Va. R. Sup. Ct. 4.1;

13. To make a referral to the Office of the Inspector General of the United States Department of Justice (DOJ) to investigate Defendant Assistant U.S. Attorney Drew Inman's misconduct but not limited to perjury or subornation or perjury or any other misconduct which is of a criminal nature;

14. To declare that the court is acting in excess of jurisdiction by permitting the Defendants to continue pushing for anything adverse to Plaintiff concerning his supervised release; and

15. Grant Plaintiff Brian David Hill any other such relief as this Court deems appropriate.

Brian David Hill requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this 4th day of February, 2025.

Edited to be finalized on the 5th day of February, 2025.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### a.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          02/05/2025

Signature of Plaintiff          _Brian D. Hill_
                                  Signed  Brian D. Hill

Printed Name of Plaintiff        Brian David Hill

### b.    For Attorneys

Date of signing:          _____

Signature of Attorney          _____
Printed Name of Attorney       _____
Bar Number                     _____
Name of Law Firm               _____
Street Address                 _____
State and Zip Code             _____
Telephone Number               _____
E-mail Address                 _____

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Print    Save As...    Add Attachment    Reset